UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------- X

JMC RESTAURANT HOLDING, LLC, and JMC :
RESTAURANT HOLDINGS :
INTERNATIONAL, LLC, :
 :
                 Plaintiff, :
 :
   -against- :
 :
MARCELO PEVIDA, JIA JU TAO, JOSEPH :
SILVESTRI, FRONT STREET RESTAURANT :
CORP., TAO INVESTMENT GROUP, and JIA :
CAI LEWIN, :
 :
              Defendants. :

---------------------------------------------------------- X

FRONT STREET RESTAURANT CORP., :
MARCELO PEVIDA, and JIA JU TAO, :
 :
          Third-party Plaintiffs, :
 :
   -against- :
 :
FRANK CIOLLI, :
 :
         Third-party Defendants. :
 :

---------------------------------------------------------- X

**MEMORANDUM AND ORDER**

14 Civ. 6157 (WFK) (VMS)

**VERA M. SCANLON, United States Magistrate Judge:**

     Before the Court is Plaintiffs' motion for sanctions against Defendants Marcelo Pevida

("Pevida") and Jia Ju Tao ("Tao"), and their counsel, Martin Shell, for alleged abuses of

discovery and fraud on the Court, pursuant to Federal Rules of Civil Procedure ("Fed. R. Civ.

P.") 26(g), 37(b) and 37(c), 28 U.S.C. § 1927 and the Court's inherent power.[1]  For the reasons stated herein, Plaintiffs' motion is **denied**.[2]

## I.    BACKGROUND

### A.    General Background[3]

Grimaldi's Pizzeria is a famous pizzeria restaurant with its origins in Brooklyn, New York.  See Amended Complaint, ECF No. 54 ¶ 14.  Between them, Plaintiffs own the U.S. and Chinese registrations for the Grimaldi's Pizzeria trademarks, service marks and trade dress (collectively, "Marks" or "Grimaldi's Marks").  Id. ¶¶ 21-30.  Defendants Pevida and Tao are the sole owners of Front Street Restaurant Corp. ("Front Street"), which operates a nightclub in Brooklyn, New York in a building shared with Grimaldi's Pizzeria's original restaurant.  Id. ¶¶ 6,

---

[1]     In the "conclusion" section of Plaintiffs' memorandum of law, Plaintiffs briefly mention that they also seek sanctions pursuant to Fed. R. Civ. P. 45.  See ECF No. 61, Attachment #38, p. 19.  Sanctions pursuant to this Rule are neither mentioned by Plaintiffs in the "introduction" section nor substantively discussed elsewhere in their motion papers.  Similarly, Fed. R. Civ. P. 45 is not mentioned at all in Plaintiffs' reply brief.  See generally ECF No. 63.  Perhaps most significantly, Plaintiffs have not affirmatively sought sanctions against Defendant Front Street, see ECF No. 61, p. 1, which was purportedly served with a subpoena in this matter and thus, appears to be the only party against whom a sanction under Fed. R. Civ. P. 45 could conceivably be proper.  As such, this Court has not considered whether sanctions pursuant to Fed. R. Civ. P. 45 are appropriate.

[2]     As Plaintiffs' motion is nondispositive in nature, this decision is issued as an order rather than as a report and recommendation.  See Fed. R. Civ. P. 72(a); Seena Int'l, Inc. v. One Step Up, LTD., 15 Civ. 1095 (PKC) (BCM), 2016 U.S. Dist. LEXIS 64850, at *30 (S.D.N.Y. May 11, 2016) ("It is well-settled that orders imposing monetary sanctions as a remedy for discovery misconduct are non-dispositive and fall within the grant of Rule 72(a).") (citing Thomas E. Hoar, Inc. v. Sara Lee Corp., 900 F.2d 522, 525 (2d Cir. 1990) ("Monetary sanctions pursuant to Rule 37 for noncompliance with discovery orders usually are committed to the discretion of the magistrate [judge] . . . .")).  Plaintiffs can, of course, appeal this decision to the District Judge under Fed. R. Civ. P. 72(a).  See Baines v. City of New York, 10 Civ. 9545 (JMF) (JLC), 2016 U.S. Dist. LEXIS 5857628, at *3 (E.D.N.Y. May 3, 2016) ("Under Rule 72(a), a party may object to a magistrate judge's order on any non-dispositive motion referred by the assigned district judge."); see also ECF No. 64.

[3]     These facts are drawn from the Amended Complaint only to provide context; the Court makes no determination as to the truth of the allegations.

37, 38.  Plaintiffs have not licensed or authorized the use of Grimaldi's Pizzeria service marks in China.  Id. ¶ 31.  Plaintiffs allege that Defendants Pevida and Tao conspired to, and did, use Plaintiffs' marks, trade dress and good will without authorization from Plaintiffs in order to open a "counterfeit" Grimaldi's Pizzeria in Shanghai, China (the "Shanghai Restaurant").  Id. ¶¶ 48, 60.

**B.     Facts Related To Motion For Sanctions**

**1.     Prior To The Commencement Of This Lawsuit**

According to the Plaintiffs, in approximately July or August of 2014, they first became aware of the Shanghai Restaurant following consumer inquiries submitted to its affiliated U.S. restaurants and a publication by "TimeOut Shanghai"—an online news publication—which inaccurately claimed that the restaurant was an outpost of the original, Brooklyn-based restaurant.  See Declaration of Olivier A. Beabeau, dated 10/28/2015, ECF No. 61, Attachment #4 ("Beabeau Decl.") ¶ 3.[4]  Shortly thereafter, Plaintiffs learned that photographs of Defendant Pevida adorned the walls of the Shanghai Restaurant.  See Beabeau Decl. ¶ 10.  With this limited knowledge, in September 2014, Plaintiffs' counsel contacted Defendants' counsel, Martin Shell, to inquire as to Defendants' involvement in the Shanghai Restaurant.  See Beabeau Decl. ¶¶ 7-8; Declaration of Keith R. Galbut, dated 10/28/2015, ECF No. 61, Attachment #1 ("Galbut Decl.") ¶¶ 6, 9.  Mr. Shell claimed that neither Pevida nor Tao was involved with the Shanghai Restaurant in any way, and he offered to have his clients execute affidavits confirming as much. See Galbut Decl. ¶¶ 7-8, 10.

---

[4]     To the extent documentary exhibits are used by counsel to support assertions made in their declarations, this Court only references the respective declaration and paragraph in which they are cited.

Notwithstanding Mr. Shell's denials and the apparent willingness of Tao and Pevida to execute affidavits, Plaintiffs retained an investigator in Shanghai to investigate the Shanghai Restaurant. See Beabeau Decl. ¶ 4. According to the investigator, the Shanghai Restaurant maintained a partner "in New York." See Beabeau Decl. ¶ 5. On the basis of the investigator's report and the pictures of Mr. Pevida, among other things, Plaintiffs filed their initial Complaint on October 21, 2014. See ECF No. 1.

**2. Following Commencement Of The Lawsuit, But Prior To Discovery**

In December 2014, before filing Defendants' Answer to the Complaint, Mr. Shell served a "safe-harbor" letter pursuant to Fed. R. Civ. P. 11 on Plaintiffs' counsel demanding withdrawal of the Complaint, threatening sanctions against Plaintiffs, and asserting that Plaintiffs' "complaint seeks redress for actions committed in Shanghai by persons other than [Defendants] Pevida and Tao." See Beabeau Decl. ¶ 15. Defendants subsequently filed their Answer denying any involvement—individually or through companies in which they own an interest—in the Shanghai Restaurant. See ECF No. 10 ¶¶ 42-46, 55-56, 58, 111-116.

In February 2015, Mr. Shell filed a letter on behalf of Defendants seeking a pre-motion conference to move to dismiss Plaintiffs' Complaint on the basis of lack of subject-matter jurisdiction, in which he stated that "Defendants have no involvement with the operations of the Shanghai [Restaurant] nor they do they receive any income from the business." See ECF No. 18. In March 2015, at the pre-motion conference before District Judge Kuntz, Mr. Shell argued that "all of the acts, everything that happened, that's alleged, happened across the world in China. Nothing happened here in America." See Beabeau Decl. ¶ 22. During this same pre-motion conference, District Judge Kuntz warned Mr. Shell that it would not "be a good hair day for you guys" if Defendants were discovered to be directly involved with the Shanghai Restaurant,

particularly in light of the Shanghai Restaurant's use of Mr. Pevida's photographs. <u>See</u> Beabeau Decl. ¶ 23.

### 3. Defendants' Fed. R. Civ. P. 26(a) Disclosures

Defendants served their Fed. R. Civ. P. 26(a) disclosures on Plaintiffs in late January 2015, which—as discussed in more detail below—did not include a reference to any joint venture agreements, emails or text messages, or the identities of any persons involved in the Shanghai Restaurant. <u>See</u> Beabeau Decl. ¶ 17.

### 4. Defendants' Responses To Plaintiffs' Discovery Demands

In February 2015, Plaintiffs served written discovery requests on Defendants pursuant to Fed. R. Civ. P. 33, 34 and 36. <u>See</u> Beabeau Decl. ¶ 19. In their March 2015 response, Defendants interposed various objections, represented that they did not possess documents pertaining to the Shanghai Restaurant and claimed to "own[] several businesses none of which have any relationship to the Shanghai [Restaurant] or any of the issues raised to this matter." <u>See</u> Beabeau Decl. ¶ 24.

More specifically, in response to requests for "all agreements known to [Defendants] relating, directly or indirectly, to the Shanghai Restaurant," identification of "all use in . . . China of any of [Plaintiffs'] Marks," an explanation of "[Defendants'] relationship with the Shanghai Restaurant" and identification of "all facts known to [Defendants] regarding the establishment of the Shanghai Restaurant," Defendants responded "[n]one." <u>See</u> Beabeau Decl. ¶ 24. The only documents Defendants disclosed in response to any of Plaintiffs' requests were organizational documents for Front Street. <u>See</u> Beabeau Decl. ¶ 25.

In their responses to requests for admission, Defendants denied any affiliation with the Shanghai Restaurant, knowledge regarding investors in the Shanghai Restaurant, participation in

the establishment and/or operation of the Shanghai Restaurant, or the right to compensation for

the establishment and/or operation of the Shanghai Restaurant. <u>See</u> Beabeau Decl. ¶ 24.

### 5. Defendants' Counsel's Statements To The Court And Follow-up

During an April 2015 conference before this Court, and, later, in a joint letter from

counsel in May 2015, Plaintiffs alleged that Defendants were in possession of documentation

that had not yet been produced. <u>See</u> Beabeau Decl. ¶ 26; ECF No. 28.

At the April 2015 conference, Mr. Shell claimed that his clients had produced all

documents in their possession, stating "we've produced all the document[s] that we have at this

time. We've answered all [of Plaintiffs'] questions." <u>See</u> Beabeau Decl. ¶ 26; ECF No. 34. Mr.

Shell reiterated this point during a May 2015 conference before this Court:

> Well, your Honor, I have with respect to Mr. Pevida and Mr. Tao, I
> have made several objections with respect to the documents that
> [Plaintiffs] asked for. Despite those objections, I have produced
> every document I have within my possession and that [Defendants]
> have given to me and I have made a number of requests for
> [Plaintiffs] to assemble all the documents they have that relate to
> the questions that have been asked and everything I have has been
> produced. There are no other documents that are responsive to
> [Plaintiffs'] request to Mr. Pevida or Mr. Tao.
>
> * * *
>
> [Defendants] have absolutely nothing to do with the Shanghai
> [R]estaurant, okay? . . . They have no documents between them
> and the Shanghai [R]estaurant and I'm sure that disappoints
> [P]laintiff[s'] counsel but that's just the truth of the matter.
> [Defendants] have no documents.

<u>See</u> Beabeau Decl. ¶ 29; ECF No. 34. During the May 2015 conference, this Court ordered

Defendants to supplement their prior productions by producing, <u>inter alia</u>, certain corporate

governance documents. <u>See</u> Beabeau Decl. ¶ 30; ECF Nos. 31, 35.

Several days after the May 2015 conference, Plaintiffs served a letter on Defendants

demanding supplemental disclosures pursuant to Fed. R. Civ. P. 26, 33, 34 and 37. According to

Plaintiffs, Defendants refused to timely supplement their prior disclosures and discovery responses. <u>See</u> Beabeau Decl. ¶ 31.

### 6. Plaintiffs Seek Documents Via Alternative Means

In February 2015—prior to Defendants' service of their discovery responses—Plaintiffs served a subpoena on Knights Investment Group, LLC ("KIG"). <u>See</u> Beabeau Decl. ¶ 38. After lengthy discussions were held regarding compliance with the subpoena, Plaintiffs and KIG reached a private agreement for the disclosure of records regarding the Shanghai Restaurant. <u>See</u> Beabeau Decl. ¶ 38. Thereafter, in June, July and August 2015, respectively, KIG disclosed to Plaintiffs upwards of 2,400 records purportedly related to the Shanghai Restaurant. <u>See</u> Beabeau Decl. ¶ 39.

Among the documents disclosed by KIG were the following: (1) two joint venture agreements ("JV Agreements") executed by Defendants, KIG, Hongfei Zhang, Radiant King and Gao Rong in 2012 and 2013 securing a 30% ownership interest for Defendants' wholly-owned company (Front Street) in the Shanghai Restaurant; (2) photos of Defendants at a signing ceremony for the 2012 JV Agreement in New York; and (3) emails and text messages amongst Defendants and/or to and from KIG, Radiant King, Emmanuel Garcia and Samuel Espinosa. <u>See</u> Beabeau Decl. ¶¶ 38-40.

### 7. Defendants' Deposition Testimony

Defendants' depositions were held in early June 2015. <u>See</u> Beabeau Decl. ¶¶ 32-33. At Tao's deposition, Tao denied having an email account; denied ever having used email to communicate regarding the Shanghai Restaurant or otherwise; denied executing any agreements regarding the Shanghai Restaurant; denied knowledge of any written agreements (by Front Street or anyone else) regarding the Shanghai Restaurant; claimed he only had one meeting with KIG and that it did not amount to anything; denied any knowledge of KIG's involvement with the Shanghai

Restaurant; and denied all knowledge of Radiant King, a signatory to the 2013 JV Agreement. <u>See</u> Beabeau Decl. ¶ 32.

At Pevida's deposition, Pevida denied any involvement with the Shanghai Restaurant; refuted published claims by the manager of the Shanghai Restaurant (Tina Lou) that he is involved in the Shanghai Restaurant; denied knowledge of the KIG representative who signed the JV Agreements (Hongfei Zhang, with whom Pevida is pictured at the New York signing ceremony); and denied knowledge of Radiant King. <u>See</u> Beabeau Decl. ¶ 33.[5]

### 8. Defendants' Subsequent Disclosures and Motion To Dismiss

On July 24, 2015—four months after Defendants served responses to Plaintiffs' Rule 34 request for documents—Mr. Shell (on behalf of only Pevida) served Plaintiffs with a "supplemental disclosure" of twenty-two documents. <u>See</u> Beabeau Decl. ¶ 34. The supplemental disclosure included emails exchanged between Pevida and Tao in 2012 and 2013 discussing the JV Agreements, drafts of which were attached to the emails. <u>Id.</u>

On August 14, 2015, Defendants Tao and Pevida served Plaintiffs with a motion to dismiss to Complaint based on, <u>inter alia</u>, a purported lack of jurisdiction, <u>see</u> ECF No. 45, in which Defendants stated that "Radiant [King] and other investors moved forward with the planning for [the Shanghai Restaurant] based on contracts Front Street first entered into in 2012," and attached the 2012 and 2013 JV Agreements signed by Pevida and Tao on behalf of Front Street in support thereof. <u>See</u> Beabeau Decl. ¶ 35.

On October 21, 2015—seven months after Defendants served responses to Plaintiffs' Rule 34 request for documents—Defendants made another supplemental disclosure of emails.

---

[5] Pevida was confronted at his deposition with the JV Agreements and emails from his email account forwarding allegedly misappropriated building plans for Grimaldi's Pizzeria's coal-brick oven to Tao for apparent delivery to the Shanghai Restaurant. In response, Pevida claimed his signatures on the JV Agreements were forgeries. <u>See</u> Beabeau Decl. ¶ 35.

See Beabeau Decl. ¶ 36.  The emails provided appear to be communications between Pevida and Emmanuel Garcia, a former Shanghai Restaurant employee, between January 2015 and March 2015 regarding unpaid wages due to Shanghai Restaurant employees and a planned meeting in New York between Pevida and the operators of the Shanghai Restaurant set to occur sometime in March 2015.  See Beabeau Decl. ¶ 36.

**C.      Summary Of The Parties' Positions As To The Merits Of The Lawsuit**

According to Plaintiffs, Defendants engaged in a "calculated strategy to conceal [their] involvement in the Shanghai Restaurant" insofar as the JV Agreements—which were initially obtained through third-party discovery from KIG—confirm that Tao and Pevida, through Front Street, own a 30% stake in the Shanghai Restaurant.  For their part, Defendants essentially argue that this is a misunderstanding.  More specifically, Tao and Pevida claim that the JV Agreements evidence nothing more than their attempt, along with KIG and Radiant King, to open a legal Grimaldi's Pizzeria in China, but that they withdrew from the venture when they were unable to legally acquire the Grimaldi's Marks.  After Tao and Pevida withdrew from the venture, according to Defendants, Radiant King— one of the original investors—partnered with Patsy Grimaldi and subsequently opened the Shanghai Restaurant.

The Court will now consider the arguments raised by the Parties in their memoranda of law.

## II.    ANALYSIS

### A.    Applicable Legal Standards

Plaintiffs seek sanctions under five different legal bases, each of which has its own legal standard.  <u>See</u> Footnote 1, <u>supra</u>.

### 1.    Rule 26(g)

Fed. R. Civ. P. 26(g) requires that an attorney certify by affixing his signature that the discovery disclosure is true and complete, or in the case of discovery requests, responses and objections, that it is not frivolous, improper, unreasonable, unduly burdensome or expensive. Fed. R. Civ. P. 26(g).  "Rule 26(g) is intended to deter and curb discovery abuses, including evasive responses, by explicitly encouraging the imposition of sanctions."  <u>Kiobel v. Royal Dutch Petroleum Co.</u>, 02 Civ. 7618 (KMW) (HBP), 2009 U.S. Dist. LEXIS 55185, at *8 (S.D.N.Y. June 25, 2009) (internal quotations omitted).  Therefore, if an attorney's certification violates Rule 26(g)(1) "without substantial justification, the court . . . must impose an appropriate sanction" on the certifying attorney, the client, or both.  Fed. R. Civ. P. 26(g)(3).

"As the plain language of Rule 26(g)(3) implies, the imposition of sanctions for a violation of Rule 26(g) is mandatory, although a court has discretion over which sanction it must impose."  <u>Markey v. Lapolla Indus.</u>, 12 CV 4622 (JS) (AKT), 2015 U.S. Dist. LEXIS 112915, at *51 (E.D.N.Y. Aug. 25, 2015) (internal quotations & alterations omitted).  Rule 26(g)(3) permits sanctions, including reasonable expenses and attorneys' fees, "caused by the violation" of the Rule.  Fed. R. Civ. P. 26(g)(3).  "Accordingly, courts have interpreted Rule 26(g)(3) as incorporating a requirement that there be harm resulting from the alleged violation of the Rule."  <u>Markey</u>, 2015 U.S. Dist. LEXIS 112915, at *52 (citing <u>Kara Holding Corp. v. Getty Petroleum Mktg.</u>, 99 Civ. 0275 (RWS), 2004 U.S. Dist. LEXIS 15864, at *67 (S.D.N.Y. Aug. 13, 2004)

("[S]anctions under Rule 26(g) are not appropriate when a party has not been harmed by the failure of his adversary.") (internal quotations omitted)).

### 2.    Rule 37(b)(2)

Rule 37(b)(2) states that a court may grant sanctions against a party that "fails to obey an order to provide or permit discovery."  Fed. R. Civ. P. 37(b)(2).  "Although bad faith is not required to impose sanctions pursuant to Rule 37(b)(2), 'intentional behavior, actions taken in bad faith, or grossly negligent behavior justify severe disciplinary sanctions.'"  Vaigasi v. Solow Mgmt. Corp., 11 Civ. 5088 (RMB) (HBP), 2016 U.S. Dist. LEXIS 18460, at *58 (S.D.N.Y. Feb. 16, 2016) (quoting Metropolitan Opera Ass'n v. Local 100, Hotel Emps. & Rest. Emps. Int'l Union, 212 F.R.D. 178, 219 (S.D.N.Y. 2003)); see Shcherbakovskiy v. Da Capo Al Fine, Ltd., 490 F.3d 130, 140 (2d Cir. 2007) ("[T]he severity of [the] sanction must be commensurate with the non-compliance.").  Whether to impose sanctions "is committed to the sound discretion of the district court and may not be reversed absent an abuse of that discretion."  Luft v. Crown Publishers, Inc., 906 F.2d 862, 865 (2d Cir. 1990) (citing, inter alia, Nat'l Hockey League v. Metropolitan Hockey Club, Inc., 427 U.S. 639, 642 (1976) (per curiam)).

### 3.    Rule 37(c)(1)

Pursuant to Fed. R. Civ. P.  37(c), a court may impose sanctions in the event of a party's failure to disclose, to supplement an earlier response, or to admit as required by Rule 26(a) or (e), "unless the failure was substantially justified or is harmless."  Fed. R. Civ. P. 37(c)(1).  The purpose of this Rule is to prevent the practice of "sandbagging" an opposing party with new evidence.  Ventra v. United States, 121 F. Supp. 2d 326, 332 (S.D.N.Y. 2000).  The Rule permits a court to impose a variety of sanctions for discovery-related abuses, including "[the] payment of the reasonable expenses, including attorney's fees."  Id.  Where, as here, "the alleged misconduct

is the non-production of relevant documents, district courts have broad discretion in fashioning an appropriate sanction." <u>Fossil Indus., Inc. v. Onyx Specialty Papers, Inc.</u>, 302 F.R.D. 288, 293 (E.D.N.Y. 2014) (citing <u>Creative Resources Group of New Jersey v. Creative Resources Group, Inc.</u>, 212 F.R.D. 94, 102 (E.D.N.Y. 2002)).[6]

When seeking sanctions for a failure to produce discovery, the moving party must demonstrate: "(1) that the party having control over the evidence had an obligation to timely produce it; (2) that the party that failed to timely produce the evidence had 'a culpable state of mind'; and (3) that the missing evidence is 'relevant' to the party's claim or defense such that a reasonable trier of fact could find it would support that claim or defense." <u>In re Sept. 11th Liab. Ins. Coverage Cases</u>, 243 F.R.D. 114, 125 (S.D.N.Y. 2007) (quoting <u>Residential Funding Corp. v. DeGeorge Fin. Corp.</u>, 306 F.3d 99, 107 (2d Cir. 2002)).

### 4. 28 U.S.C. § 1927 And The Court's Inherent Authority

Pursuant to 28 U.S.C. § 1927, "[a]ny attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." Similarly, under the Court's inherent authority to control the proceedings that take place before it, any federal court "may exercise its inherent power to sanction a party or an attorney who has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'" <u>Ransmeier v. Mariani</u>, 718 F.3d 64, 68 (2d Cir. 2013) (quoting <u>Chambers v. NASCO, Inc.</u>, 501 U.S. 32, 43-44 (1991)).

Under either of these grounds, "a court must find clear evidence that (1) the offending party's claims were entirely without color, and (2) the claims were brought in bad faith—that is, 'motivated by improper purposes such as harassment or delay.'" <u>Eisemann v. Greene</u>, 204 F.3d

---

[6]     Although, by its terms, Fed. R. Civ. P. 37(c)(1) permits the preclusion of evidence as an option, Defendants only seek attorneys' fees under this Rule.

393, 396 (2d Cir. 2000) (quoting <u>Schlaifer Nance & Co. v. Estate of Warhol</u>, 194 F.3d 323, 336 (2d Cir. 1999)).  "The test is conjunctive and neither meritlessness alone nor improper purpose alone will suffice."  <u>Sierra Club v. U.S. Army Corps of Eng'rs</u>, 776 F.2d 383, 390 (2d Cir. 1985).

"With respect to the first requirement, a claim is entirely without color when it lacks any basis in law or fact."  <u>Martin v. Giordano</u>, 11 Civ. 4507 (ARR) (JO), 2016 U.S. Dist. LEXIS 61007, at *38 (E.D.N.Y. May 9, 2016) (citing <u>Sierra Club</u>, 776 F.2d at 390).  "With respect to the second requirement, the bad faith standard is interpreted stringently."  <u>Id.</u> (citing <u>Eisemann</u>, 204 F.3d at 396).  "[B]ad faith may be inferred 'only if actions are so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose such as delay.'"  <u>Schlaifer</u>, 194 F.3d at 336 (quoting <u>Shafii v. British Airways, PLC</u>, 83 F.3d 566, 571 (2d Cir. 1996)).  "A determination that a party or attorney acted in bad faith demands a 'high degree of specificity in the factual findings' of the district court."  <u>Martin</u>, 2016 U.S. Dist. LEXIS 61007, at *38 (quoting <u>Dow Chem. Pacific Ltd. v. Rascator Mar. S.A.</u>, 782 F.2d 329, 344 (2d Cir. 1986)).

"These grounds for imposing sanctions materially differ only insofar as sanctions under 28 U.S.C. § 1927 are limited to attorneys or others authorized to practice before the courts."  <u>Id.</u> "Sanctions imposed pursuant the court's inherent authority are not so limited; they may be imposed against an attorney, a party, or both."  <u>Id.</u> at *38-39 (citing <u>Oliveri v. Thompson</u>, 803

F.2d 1265, 1273 (2d Cir. 1986) (describing this as "the only meaningful difference between an award made under § 1927 and one made pursuant to the court's inherent power")).

**B.     Application**

**1.     Plaintiffs Fail To Offer Sufficient Legal Analysis To Justify The Imposition Of Sanctions Pursuant To Fed. R. Civ. P. 26(g), 28 U.S.C. § 1927 Or The Court's Inherent Power**

Although Plaintiffs submitted a memorandum of law in support of their motion for sanctions, they failed to engage in adequate legal analysis or to set forth case law in their moving brief that would explain why the imposition of the sanctions they seek under Fed. R. Civ. P. 26(g), 28 U.S.C. § 1927, or the Court's inherent power is warranted.  Plaintiffs' memorandum of law can be divided into three sections: the first, entitled "background," states the facts and allegations which form the basis of Plaintiffs' motion and are otherwise contained in Plaintiffs' counsel's accompanying affidavits, see ECF No. 61, Attachment #38, p. 3-11; the second, entitled "legal standard," references the rules pursuant to which Plaintiffs seek sanctions, as well as the standard under which these rules could be imposed, id. at p. 11-15; and the third, entitled "defendants engaged in textbook sanctionable conduct," essentially highlights what Plaintiffs purport to be the most important facts, but in an accusatory manner, id. at p. 15-19.

Although Plaintiffs refer to Fed. R. Civ. P. 26(g), 28 U.S.C. § 1927 and the Court's inherent power in the "legal standard" section of their brief, they do not attempt to explain which specific acts of Defendants and/or Defendants' counsel, as applied to the relevant legal standards, they believe are sanctionable.  See id. at p. 15-19.  Plaintiffs' submission "effectively places on the court the burden of conducting the initial legal analysis that is properly the responsibility of [Plaintiffs'] counsel."  Rotblut v. 300 E. 74th St. Owners Corp., 96 Civ. 5762 (JSM) (MHD), 1997 U.S. Dist. LEXIS 242, at *2 (S.D.N.Y. Jan. 16, 1997).  This is particularly

true where, as here, Plaintiffs broadly seek sanctions against Defendants Tao and Pevida, as well as Defendants' counsel, Mr. Shell, but do not specifically explain or analyze which individual or individuals should be sanctioned under what authority for which specific acts.  It is not the Court's responsibility to fill in the analytical gaps left by Plaintiffs or to tie together the purported facts supporting their motion and the legal rules under which they seek relief.

In sum, Plaintiffs' failure to engage in legal analysis in their moving brief, alone, merits denial of their motion insofar as it seeks relief under Fed. R. Civ. P. 26(g), 28 U.S.C. § 1927 and the Court's inherent power.[7]  See Quinio v. Aala, 15 Civ. 4912 (PKC) (ST), 2016 U.S. Dist. LEXIS 59639, at *6-7 (E.D.N.Y. May 4, 2016) (noting that moving party's failure to engage in legal analysis or set forth case law authorizing the imposition of the sanctions sought "alone merits denial of plaintiff's motion"); Tylena M. v. Heartshare Human Servs., 02 Civ. 8401 (VM) (THK), 2004 U.S. Dist. LEXIS 10398, at *9 (S.D.N.Y. June 7, 2004) (denying motion for sanctions because the moving party failed to cite any legal authority in support of its application).

### 2. This Court Will Not Decide The Ultimate Issue Of Fact In The Case On A Discovery Motion

Notwithstanding Plaintiffs' failure to provide sufficient legal analysis, sanctions under Fed. R. Civ. P. 26(g), 28 U.S.C. § 1927 and the Court's inherent power would be otherwise inappropriate because such a finding would necessarily require this Court to resolve the ultimate issue of fact in this litigation.  Much, if not all, of Plaintiffs' argument stems from their belief that the JV Agreements conclusively prove Tao and Pevida's 30% ownership stake in the

---

[7]     Although Plaintiffs superficially reference case law in their reply brief which could arguably be described as legal analysis, "[i]t is well settled that a district court is free to disregard argument raised for the first time in reply papers."  Kenney v. Clay, 11 Civ. 790 (DNH) (ATB), 2016 U.S. Dist. LEXIS 37535, at *20-21 (N.D.N.Y. Mar. 23, 2016) (citing Am. Hotel Int'l Group Inc. v. OneBeacon Ins. Co., 611 F. Supp. 2d 373, 375 (S.D.N.Y. 2009)).

Shanghai Restaurant, while Defendants claim that the same JV Agreements evidence nothing more than a business venture that concluded before a restaurant in China could be launched after Tao and Pevida failed to acquire the rights to the Grimaldi's Marks. It is, thus, Defendants' position that they respected, not disregarded, U.S. law. This fundamental disagreement is at the heart of both Plaintiffs' sanctions motion and the determination of Defendants' liability in this litigation. At this juncture, this Court cannot, and will not, assume the ultimate fact-finding role by determining whether the JV Agreements, among the other evidence presented by Plaintiffs,[8] conclusively support any Parties' version of events. Cf. Scholastic, Inc. v. Stouffer, 221 F. Supp. 2d 425, 440-445 (S.D.N.Y. 2002) (finding of sanctions based largely on undisputed facts).

### 3. Rule 37(b) and 37(c) Sanctions

Notwithstanding Plaintiffs' failure to provide legal support for sanctions under Fed. R. Civ. P. 26(g), 28 U.S.C. § 1927 and the Court's inherent power, it is well-settled that a court supervising discovery has broad discretion to impose sanctions pursuant to Fed. R. Civ. P. 37 for discovery abuses. See Shcherbakovskiy v. Da Capo Al Fine, Ltd., 490 F.3d 130, 135 (2d Cir. 2007) ("[D]istrict courts possess wide discretion in imposing sanctions under Rule 37." (internal quotation & citation omitted)); John B. Hull, Inc. v. Waterbury Petroleum Prods., Inc., 845 F.2d 1172, 1176 (2d Cir. 1988) (the "imposition of sanctions under Rule 37 is within the discretion of the district court"). "The party seeking Rule 37 sanctions bears the burden of showing that the opposing party failed to timely disclose information." Markey v. Lapolla Indus., 12 Civ. 4622

---

[8]     In addition, Plaintiffs point to evidence that may show that Defendants Tao and Pevida lied during their depositions, forwarded misappropriated building and oven plans to be used for the Shanghai Restaurant, and paid Shanghai Restaurant employees even as this litigation progressed. As with the JV Agreements, Defendants dispute the conclusions to be drawn from this purported evidence. The "table of contents" section of Plaintiffs' memorandum of law underscores how much of the Parties' substantive dispute turns on credibility, as Plaintiffs repeatedly refer therein to "Defendants' lies." See ECF No. 61, Attachment #38, p. 2.

(JS) (AKT), 2015 U.S. Dist. LEXIS 112915, at *46 (E.D.N.Y. Aug. 25, 2015) (internal quotation marks omitted).

### a.    Rule 37(b)

With respect to Fed. R. Civ. P. 37(b), Plaintiffs appear to argue that Defendants should be sanctioned for their purported failure to obey the Court's May 12, 2015 Order, which called for Defendants to produce various documents related to Front Street's business by May 19, 2015. See ECF Nos. 31, 35.  The exact documents to be produced were discussed with the Court in general terms during the May 12, 2015 conference, see ECF No. 35, and the May 12, 2015 Order itself required Defendants to "supplement the[ir] production as to corporate governance documents and other documents that were discussed during the . . . conference," see ECF No. 31. Plaintiffs do not state what specific documents they believe should have been produced pursuant to the May 12, 2015 Order, but which were not.  Although, perhaps, Defendants did not comply with the Court's May 12, 2015 Order, Plaintiffs failed to subsequently file a motion to compel, and according to Tao and Pevida, Defendants supplemented their disclosures in July, August and October of 2015.

A sanction under these circumstances is unwarranted, as the Court's May 12, 2015 Order did not include a clear list of the documents Defendants were required to produce.  See Daval Steel Products, a Div. of Francosteel Corp. v. M/V Fakredine, 951 F.2d 1357, 1363 (2d Cir. 1991) ("Provided that there is a clearly articulated order of the court requiring specified discovery, the district court has the authority to impose Rule 37(b) sanctions for noncompliance with that order.") (citation omitted).  To the contrary, the spirit of the May 12, 2015 Order was that the Parties should work together to coordinate and confirm the production of responsive documents.  See Transcript of 5/12/2015 Conference, ECF No. 35, p. 15 ("[The Court's]

suggestion is that you work together to figure out the document issues . . . .").  Along a similar

vein, the Court's September 3, 2015 Order required the Parties to "confer" as to additional

documents related to licensing and KIG.  <u>See</u> ECF No. 42, p. 2.

**b.**      **Rule 37(c)**

"Discovery is run largely by attorneys, and the court and the judicial process depend

upon honesty and fair dealing among attorneys."  <u>In re Sept. 11th</u>, 214 F.R.D. at 125.  Thus, as

previously noted, "a court may impose sanctions in the event of party's failure to disclose, to

supplement an earlier response, or to admit as required by Rule 26(a) or (e), 'unless the failure

was substantially justified or is harmless.'"  <u>Markey</u>, 2015 U.S. Dist. LEXIS 112915, at *46

(quoting Fed. R. Civ. P. 37(c)(1)).

Here, Plaintiffs appear to argue that, pursuant to Fed. R. Civ. P. 26(e), 33 and 34, Tao and

Pevida should have produced to Plaintiffs and/or identified: (1) the JV Agreements; (2) a set of

emails from 2012 and 2013 between Defendants and KIG discussing the JV Agreements; (3) a

set emails from 2015 between Pevida and non-party Emmanuel Garcia regarding unpaid wages

due to Shanghai Restaurant employees and a planned meeting in New York between Pevida and

the operators of the Shanghai Restaurant to occur in March 2015; and (4) text messages between

Tao and a representative of KIG from 2013 discussing the Grimaldi's Marks registered by

Plaintiffs (collectively, "the disputed documents").  Plaintiffs claim that the disputed documents

should have been produced and/or identified in response to the following interrogatories, among

others:

> Identify all agreements known to you relating, directly or
> indirectly, to the Shanghai Restaurant.
>
> * * *
>
> Identify all use in commerce in . . . China of the any of the
> [Grimaldi's] Marks of which you are aware by persons other than

18

you or Plaintiffs[, including] . . . any communications between you
and the person using the [Grimaldi's] Marks.

* * *

Explain in detail your relationship with the Shanghai Restaurant.

* * *

Identify all facts known to you regarding the establishment of the
Shanghai Restaurant.

See Beabeau Decl. ¶ 24.  In their discovery demands, Plaintiffs defined "Shanghai Restaurant"

and "[Grimaldi's] Marks" as follows:

Shanghai Restaurant: [T]he restaurant operating as 'Patsy
Grimaldi's' and/or 'Patsy Grimaldi's Coal Brick-Oven Pizzeria' in
Shanghai, China and located at or near No. 24-25 Lane 320,
Tianping Road, Xuhui District.

* * *

[Grimaldi's] Marks: Grimaldi's, Grimaldi's Coal Brick-Oven
Pizzeria, Patsy Grimaldi's, Patsy Grimaldi's Coal-Brick Oven
Pizzeria, and/or any derivations thereof.

Id.

In response, Defendants' argument is two-fold.  First, Defendants claim that they did not

identify or produce the disputed documents because Plaintiffs defined "Shanghai Restaurant" too

narrowly to encompass Tao and Pevida's unsuccessful joint venture, and failed to define the

terms "relationship" and "establishment."  As Defendants summarily argue, "Plaintiffs must live

with their definitions, errors on their part included."  See ECF No. 62, p. 10.  Second, Defendants

assert that, even if Plaintiffs' claim is true, Plaintiffs did not suffer any harm because the

disputed documents were either produced by KIG and/or by Defendants as part of their

supplemental disclosures.  Id. at p. 3.

On balance, the Court agrees with Defendants that even if they should have produced the

documents sought in response to Plaintiffs' discovery demands earlier, the failure to do so prior

to October 2015 was harmless.  Plaintiffs are not entirely clear in their moving brief, but as far as

the Court can glean, Plaintiffs claim that Defendants' failure to disclose the disputed documents "delayed the litigation by nearly a year" and forced Plaintiffs to secure records from KIG "at great expense."  See ECF No. 61, Attachment #38, p. 2.  Both assertions are belied by the record before the Court, as much—if not all—of the actions taken by Plaintiffs' counsel in this litigation were, or would have been, undertaken irrespective of Defendants' initial lack of production or disclosure.

With regard to Plaintiffs' claim of "delay," Plaintiffs imply that, had Defendants disclosed the disputed documents in March 2015, it would have somehow obviated the need for continued litigation in this matter.  Plaintiffs' flawed logic, though, assumes that which the Court has already declined to conclude at this juncture: that the JV Agreements conclusively establish that Defendants are liable as alleged in Plaintiffs' Amended Complaint.  Even if Defendants had produced the disputed documents in March 2015, the Parties would nonetheless have disputed the conclusions to be drawn from these documents, just as they do now, thus necessitating the same continued litigation as has otherwise occurred.

Similarly, even if Defendants had produced the disputed documents in their responses to Plaintiffs' discovery demands, Plaintiffs would have sought all the same documents and/or additional documents from KIG through third-party discovery, and thus incurred the same expenses.  To be sure, Plaintiffs served a subpoena on KIG in February 2015, see Beabeau Decl. ¶ 38, more than a month before Defendants even had an opportunity to provide their discovery responses in March 2015.[9]  Thus, Plaintiffs had already embarked on a course of litigation with

---

[9]     Although not dispositive, it is also worth noting that Plaintiffs were ultimately in possession of all disputed documents and information they claim Defendants should have disclosed by, at the latest, October 2015.  As of this writing, in June 2016, discovery has not concluded, in large part because of the addition, or attempted addition, of new parties.  See ECF Nos. 54, 92.  As such, Plaintiffs have had a more than adequate opportunity to conduct any and

KIG without having received Defendants' responses, raising any alleged deficiency with Defendants' counsel, or seeking relief from the Court via a motion to compel.  Defendants will not be sanctioned and required to pay for Plaintiffs' litigation cost incurred as a result of Plaintiffs' efforts to develop a complete record from non-party sources.

In sum, because Plaintiffs suffered no prejudice, Defendants' allegedly delayed disclosure of the disputed documents and information was harmless, and thus, sanctions pursuant to Rule 37(c) are not warranted.  See Lujan v. Cabana Mgmt., 284 F.R.D. 50, 68 (E.D.N.Y. 2012) ("An omission or delay in disclosure is harmless where there is "an absence of prejudice" to the offended party.").

## III.      CONCLUSION

For the foregoing reasons, Plaintiffs' motion for sanctions is **denied**.

Dated: June 14, 2016
      Brooklyn, New York

*Vera M. Scanlon*
_____
VERA M. SCANLON
United States Magistrate Judge

---

all discovery that may have stemmed from the allegedly delayed production of the disputed documents.